©COPY

*FILED

SCHLUETER, KWIAT & KENNEDY LLLP

2018 MAY 23 PM 1:14

| MICHAEL H. SCHLUETER | 8534 |
|---|---|
| JASON R. KWIAT | 9188 |
| ANDREW M. KENNEDY | 9734 |

HENRIETTA CHONG, CLERK
THIRD CIRCUIT COURT
STATE OF HAWAII

Atrium Court
75-167 Kalani Street, Ste. 201
Kailua-Kona, Hawaii 96740
Tel. No. (808) 987-7275
Fax No. (808) 443-0339
inquiries@kona-lawyer.com

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT
STATE OF HAWAI'I

| | |
|---|---|
| JAMI L. HARPER,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAI'I POLICE DEPARTMENT;<br>PAUL K. FERREIRA, in his official<br>and individual capacities; HARRY S.<br>KUBOJIRI, in his official and<br>individual capacities; and DOE<br>DEFENDANTS 1-50,<br><br>Defendants. | Civil No. **18-1-109K**<br>(Other Non-Vehicle Tort)<br><br>COMPLAINT; JURY DEMAND;<br>SUMMONS |

## COMPLAINT

Plaintiff JAMI L. HARPER ("Plaintiff"), through Schlueter, Kwiat & Kennedy LLLP, hereby alleges and avers as follows:

I hereby certify that this is a full, true and correct copy of the original on file in this office.

Clerk, Third Circuit Court, State of Hawaii

# EXHIBIT "A"

**RECEIVED**

SEP 1 3 2018

OFFICE OF THE CORPORATION COUNSEL
COUNTY OF HAWAII

John accepted service

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims in this matter pursuant to Chapter 663 of the Hawai'i Revised Statutes ("HRS"), and jurisdiction over all of the named defendants pursuant to HRS §§ 603-21.5 and 634-35.

2. Venue in this action is proper in the Circuit Court of the Third Circuit of the State of Hawaii pursuant to HRS § 603-36 as the injuries suffered by Plaintiff herein occurred within the County and State of Hawaii.

## PARTIES

3. Plaintiff is a natural person, who at all relevant times, was residing in the State of Hawaii and within the County of Hawai'i and was a Police Officer II for the Hawai'i Police Department for approximately eight years.

4. At all relevant times, Defendant Hawai'i Police Department (the "Department") was and is a duly organized public agency in the County and State of Hawai'i.

5. At all relevant times, Defendant Paul K. Ferreira ("Chief Ferreira") was and is a resident of the County and State of Hawai'i, and has served as the Chief of Police of the Department from December 30, 2017 to the present. Chief Ferreira is sued herein in his official and individual capacities.

6. At all relevant times, Defendant Harry S. Kubojiri ("Chief Kubojiri") was and is a resident of the County and State of Hawai'i, and served as the Chief of Police of the Department from January 5, 2009 through December 30, 2017. Chief Kubojiri is sued herein in his official and individual capacities.

7. DOE DEFENDANTS 1-50 (the "Doe Defendants") are individuals whose true identities and capacities are unknown to Plaintiff and their counsel, despite diligent inquiry and

2

investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged herein and who in some manner or form not currently discovered or known to Plaintiffs may have contributed to or be responsible for the injuries alleged herein. The true names and capacities of the Doe Defendants will be substituted as they become known.

8. As used herein and unless otherwise indicated, "the Defendants" shall mean and collectively refer to the Department, Chief Ferreira, Chief Kubojiri, and the Doe Defendants.

## HAWAI'I REVISED STATUTES

9. HRS § 386-1.5 provides, "[t]he legislature finds and declares that the practice of discrimination because of race, color, religion, age, sex, including gender identity or expression, sexual orientation, marital status, national origin, ancestry, or disability in employment, housing, public accommodations, or access to services receiving state financial assistance is against public policy."

10. Pursuant to HRS § 378-1, a disability "means the state of having a physical or mental impairment which substantially limits one or more major life activities, having a record of such an impairment, or being regarded as having such an impairment."

11. In relevant part, HRS § 378-2(a) provides "It shall be an unlawful discriminatory practice: (1) "Because of . . . disability . . . arrest and court record . . . (A) For any employer to . . . discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment."

## HAWAI'I ADMINISTRATIVE RULES

12. The Hawai'i State Legislature, in 2009, directed the Hawai'i Civil Rights Commission ("HCRC") to adopt certain rules to conform, at minimum, to definitions set forth in the Americans with Disabilities Act Amendments Act. Thus, the HCRC adopted Title 12, Chapter 46, Subchapter 9 of the Hawai'i Administrative Rules, which sets forth the regulations governing disability discrimination by employers against individuals in the State of Hawai'i.

13. Pursuant to HAR § 12-46-181, "the definition of disability is to be construed broadly in favor of expansive coverage to the maximum extent permitted by [HRS] Chapter 378, HRS. The primary object of attention in cases brought under [HRS] Chapter 378 and these administrative rules should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the person meets the definition of disability. The determination of whether a person has a disability should not demand extensive analysis."

14. Pursuant to HAR § 12-46-183(a), [i]t is unlawful for an employer or other covered entity to discriminate on the basis of disability against a qualified person in regard to . . .

> (2) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;
>
> (3) Rates of pay or any other form of compensation and changes in compensation;
>
> (4) Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists;
>
> (5) Leaves of absence, sick leave, or any other leave;
>
> (6) Fringe benefits available by virtue of employment, whether or not administered by the employer or other covered entity;

(7) Selection and financial support for training, including apprenticeships, professional meetings, conferences, and other related activities, and selection for leaves of absence to pursue training; and

(8) Any other term, condition, or privilege of employment, including activities sponsored by an employer or other covered entity such as social and recreational programs.

15. Pursuant to HAR § 12-46-183(b), "[t]he term discrimination includes, but is not limited to, the acts made unlawful in sections 12-46-184 through 191, inclusive.

## COLLECTIVE BARGAINING AGREEMENT

16. At all times relevant, Plaintiff, the Department, Chief Ferreira, and the Doe Defendants were parties covered by that certain Agreement between the County of Hawaiʻi and the State of Hawaiʻi Organization of Police Officers Bargaining Unit 12, effective dates July 1, 2011 through June 30, 2017 (the "CBA").

17. Article 13 of the CBA sets forth the disciplinary and/or dismissal procedures for employees that are covered by the CBA.

18. Article 13.A of the CBA provides that the "discipline and/or discharge of regular employees shall be for cause. When it becomes necessary for the Employer to initiate and impose disciplinary actions against any employee, <u>such actions shall be administered in a fair and impartial manner, with due regard to the circumstances of the individual case</u>. Discipline shall be deemed to include written reprimands, suspensions, dismissals, disciplinary transfers and disciplinary demotions."

19. Article 13.D of the CBA sets forth the disciplinary procedures that the Department was required to follow when taking disciplinary action against an employee, such as Plaintiff.

5

20. Article 32 of the CBA sets forth the grievance procedure that the Department was required to follow with respect to any grievance lodged against the Department by an employee, such as Plaintiff.

## SUBJECT INCIDENT

21. In CR No. 16-1-084K, *State of Hawai'i v. Jami Harper*, Plaintiff was charged with Assault in the Second Degree, a felony, as a result of an incident that took place between Plaintiff and Mr. Kent Olson (the "Complainant") on January 22, 2016, in Kona, County and State of Hawai'i (the "Incident").

22. The felony assault charge read as follows: On or about the 22nd day of January 2016, in Kona, County and State of Hawai'i, JAMIE [sic] HARPER <u>intentionally, knowingly, and/or recklessly caused</u> substantial bodily injury to another person, Kent Olson, a person sixty years of age or older, and in the course of committing a felony inflicted serious or substantial bodily injury upon a person sixty years of age or older thereby committing the offense of Assault in the Second Degree . . ."

23. This charge was later amended to delete the language "a person sixty years of age or older, and in the course of committing a felony inflicted serious or substantial bodily injury upon a person sixty years of age or older," but the charge remained Assault in the Second Degree.

24. After raising a defense under HRS Chapter 704, three qualified psychologists and/or psychiatrists determined that at the time of the Incident, Plaintiff lacked the state of mind necessary to substantiate the offense of Assault in the Second Degree.

25. As a result of these examiners' reports, Plaintiff and the Office of the Prosecuting Attorney for the County of Hawai'i (the "Prosecution"), on December 7, 2016, the Circuit

Court of the Third Circuit acquitted Plaintiff of Assault in the Second Degree, as the Prosecution and Plaintiff stipulated that Plaintiff lacked the state of mind necessary to substantiate the offense of Assault in the Second Degree.

26. The Prosecution and Plaintiff agreed that at the time of the Incident, Plaintiff lacked the state of mind necessary to substantiate the offense of Assault in the Second Degree due to a medical condition that temporarily affected his volitional and cognitive abilities.

27. The Prosecution and Plaintiff further agreed that Plaintiff's condition was temporary, that he did not need to be committed to a mental institution or hospital, that he was not a danger to himself or others, and that he could manage his own affairs without Court supervision. Thus, the Court immediately discharged Plaintiff from its jurisdiction upon acquitting him of Assault in the Second Degree.

28. Before the Department terminated Plaintiff on May 25, 2016, it was aware that Plaintiff may have acted because of this temporary medical condition and not with the state of mind required to hold a person penally responsible for the offense of Assault in the Second Degree as it had obtained his medical records for the period that Plaintiff was hospitalized immediately following the Incident, and as media coverage for the incident repeatedly referred to Plaintiff's four-day hospitalization immediately following the Incident for an "unspecified medical condition."

## COMPLAINANT'S CIVIL PROCEEDING AGAINST PLAINTIFF

29. Shortly after the Incident, the Complainant, on January 27, 2016, filed a civil proceeding against Plaintiff in 3SS16-1-016K for an injunction against harassment pursuant to HRS § 604-10.5, however, by agreement of the parties, the proceeding was dismissed without prejudice on April 26, 2016.

30. Before terminating Plaintiff on May 25, 2016, the Defendants were also aware that this civil proceeding had been brought and was ultimately dismissed by agreement between Plaintiff and the Complainant.

## ADMINISTRATIVE LEAVE AND TERMINATION OF PLAINTIFF

31. The day following the Incident, Plaintiff was placed on administrative leave without pay. He remained on administrative leave without pay from January 27, 2016 through March 26, 2016.

32. On March 21, 2016, Police Chief Harry Kubojiri ("Chief Kubojiri") informed Plaintiff in writing that he was being placed on administrative leave with pay, effective March 27, 2016.

33. In this letter, Chief Kubojiri stated that his decision was "[d]ue to additional time being needed to properly investigate your alleged violations of the Hawai'i Police Department's General Orders and considering the seriousness of these allegations against you, I find your presence may be detrimental to the conduct of the investigation and/or to the operations of the department. My decision is pursuant to the Bargaining Unit 12 Collective Bargaining Agreement, 55.F."

34. Chief Kubojiri, in his letter, assured Plaintiff that "[i]f the charges against you are unfounded or not substantiated, you will be reinstated without loss of pay for the duration of the leave and rights and benefits will be restored as though you had not been on leave."

35. Article 55.F.3 of the CBA provides that "[a]n employee who has been placed on a leave of absence without pay shall be reinstated without loss of pay and rights and benefits will be restored as though the employee had not been on leave if the employee is cleared during the investigation or the charge is dropped or not substantiated."

36. On May 23, 2016, while the criminal case was still pending, Plaintiff, Chief Kubojiri, and a representative of the State of Hawai'i Organization of Police Officers Union ("SHOPO"), Gabriel Malani, participated in a pre-determination hearing to provide Plaintiff an opportunity to state why he should not be dismissed.

37. The very next day, on May 24, 2016, Chief Kubojiri wrote to Plaintiff, summarizing what Plaintiff and Mr. Malani had said at the May 23rd hearing. Then, Chief Kubojiri summarily rejected the evidence he heard from Plaintiff and fired him, stating "I am not persuaded that any course of action other than discharge is appropriate at this time" and told Plaintiff that his employment as a Police Officer II with the Department would be "terminated as of the close of business on May 25, 2016."

38. Plaintiff's subsequent acquittal on December 7, 2018 absolved Plaintiff of any criminal wrongdoing regarding the Incident, thus rendering the criminal offense for which he was charged unsubstantiated and/or unfounded.

39. Despite Plaintiff's acquittal, the Department still refused to reinstate Plaintiff despite the Article 55.F.3 of the CBA and despite Chief Kubojiri's written assurance to Plaintiff that if the criminal charges were "unfounded or not substantiated," he would be reinstated.

40. Chief Kubojiri's written assurance on March 21, 2106 that Plaintiff would be reinstated as a police officer if the criminal charges were "unfounded or not substantiated" was false when it was made.

41. The Defendants, and each of them, did not and have not participated in the disciplinary proceedings in a "fair and impartial manner" giving "due regard to the circumstances of the individual case." The Defendants have summarily dismissed Plaintiff's

9

statements about the Incident. The Defendants have ignored his acquittal in the criminal proceeding. The Defendants have ignored the fact that the Complainant and Plaintiff stipulated to dismiss the civil proceeding the Complainant brought against Plaintiff for an injunction against harassment.

## THE CBA PROCEEDING

42. Plaintiff and the Department began the grievance process under the CBA's procedures shortly after the Incident occurred.

43. Ultimately, the parties were unable to resolve the matter informally or through a mediation process, and the matter proceeded in accordance with the terms and conditions of the CBA.

44. The Defendants did not participate in the informal grievance process or the subsequent mediation in good faith to ensure that Plaintiff's disciplinary proceedings were conducted in a "fair and impartial manner, with due regard to the circumstances of the individual case."

45. Throughout these proceedings, the Defendants, and specifically Chief Ferreira, made statements to representatives of SHOPO concerning Plaintiff's disability as being a key reason the Department refused to reinstate Plaintiff. Chief Ferreira repeatedly referred to Plaintiff's "insanity" as a basis that could not be reinstated as an employee of the Department. Chief Ferreira has referred to Plaintiff as a "mental defective". These statements were both false and inapplicable to Plaintiff.

46. HRS § 134-7(c) provides that "No person who . . . (2) Has been acquitted of a crime on the grounds of mental disease, disorder, or defect pursuant to section 704-411 shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically

<u>documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect.</u>

47. Plaintiff has been medically documented to no longer be adversely affected by the disorder that was the impetus driving the Incident with the Complainant.

48. Pursuant to 18 U.S.C. § 922(g), "[i]t shall be unlawful for any person— (4) who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."

49. Pursuant to 27 CFR 478.11, "adjudicated as a mental defective" means a "determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease: (1) Is a danger to himself or to others; or (2) Lacks the mental capacity to contract or manage his own affairs."

50. Plaintiff has never been diagnosed or "adjudicated as a mental defective". Neither has he been found by a court to suffer from insanity. The disability giving rise to Plaintiff's acquittal under HRS Chapter 704 was deemed by the Circuit Court to neither be continuous in nature nor was it one that required supervision. As such, the Circuit Court immediately discharged Plaintiff without the need for conditional release, continued supervision, or committal to a mental institution.

51. The Defendants, and each of them, incorrectly concluded and falsely stated that Plaintiff was a "mental defective" or that he was insane.

11

52. In violation of the CBA's disciplinary and grievance procedures, as well as its policy against discrimination, and in violation of HRS Chapter 378, the Defendants terminated Plaintiff without cause and/or in a manner that was not fair and impartial, with due regard to the circumstances and evidence surrounding the Incident.

## HAWAI'I CIVIL RIGHTS COMMISSION PROCEEDING

53. After learning that the psychiatric examiners in the criminal proceeding determined that Plaintiff was not penally responsible for the Incident, the Department still refused to reinstate Plaintiff or even consider a reasonable accommodation.

54. Thus, on or about November 18, 2016, Plaintiff also lodged a complaint with the Hawai'i Civil Rights Commission ("HCRC"), alleging that the Department discriminated against Plaintiff by terminating and/or refusing to reinstate him.

55. On April 19, 2018, the HCRC issued a right to sue letter to Plaintiff.

## COUNT I
### (Discriminatory Practices – HRS § 378-2 and HAR §§ 12-46-183 through 191, inclusive)

56. The allegations contained in paragraphs 1 - 54 are realleged and incorporated herein by reference.

57. Plaintiff's medical condition at the time the Incident occurred constitutes a disability within the meaning of HRS § 378-1 and HAR § 12-46-181.

58. The actions of the Defendants, and each of them, constitute an unlawful discriminatory practice or practices based on Plaintiff's disability in violation of HRS § 378-2 and HAR §§ 12-46-183 through 191, inclusive.

59. As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT II
### (Wrongful Termination in Violation of Hawai'i Civil Service Laws and Public Policy)

60. The allegations contained in paragraphs 1 - 59 are realleged and incorporated herein by reference.

61. Plaintiff's termination by the Defendants violates a clear mandate of public policy as Plaintiff was, at the time of the Incident, performing an important public obligation, and his termination by the Defendants was a result of his performance of this important public obligation.

62. As a direct and proximate result of the conduct of the Defendants, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT III
### (Promissory Estoppel)

63. The allegations contained in paragraphs 1 - 62 are realleged and incorporated herein by reference.

64. The Department promised that Plaintiff would be reinstated if the criminal charges were "unfounded or not substantiated".

65. Article 55.F.3 of the CBA provides that "[a]n employee who has been placed on a leave of absence without pay shall be reinstated without loss of pay and rights and benefits will be restored as though the employee had not been on leave if the employee is cleared during the investigation or the charge is dropped or not substantiated."

66. Plaintiff relied on these promises to his detriment.

67. Despite Plaintiff's acquittal in the criminal proceeding, the Department failed and refused to reinstate Plaintiff.

68. As a direct and proximate result of the conduct of the Department, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT IV
### (Negligence)

69. The allegations contained in paragraphs 1 - 68 are realleged and incorporated herein by reference.

70. At all times relevant, the Defendants, and each of them, owed a duty of reasonable care to Plaintiff with respect to affording him the rights and privileges Plaintiff enjoyed pursuant to the CBA and/or in the publication of any statement of fact referring to Plaintiff.

71. The Defendants, and each of them, violated the duty of reasonable care owed to Plaintiff by terminating Plaintiff's employment prematurely in contravention of his rights under the CBA and certain representations and assurances made by the Defendants.

72. The Defendants, and each of them, further violated the duty of reasonable care owed to Plaintiff by making false and defamatory statements concerning Plaintiff.

73. As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT V
### (Intentional Infliction of Emotional Distress)

74. The allegations contained in paragraphs 1 - 73 are realleged and incorporated herein by reference.

75. The acts of the Defendants, and each of them, were intentional and/or reckless, outrageous, unreasonable, and without just cause or excuse, thereby causing Plaintiff severe and extreme emotional distress.

76. Plaintiff is informed and believes and thereupon alleges, that the Defendants, and each of them, acted herein knowingly, intentionally, willfully, and/or recklessly, with deliberate indifference for the rights, interests, and/or well-being of Plaintiff.

77. As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT VI
### (Negligent Infliction of Emotional Distress)

78. The allegations contained in paragraphs 1 - 77 are realleged and incorporated herein by reference.

79. The acts of the Defendants, and each of them, as stated herein were negligent.

80. As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff suffered severe and extreme emotional distress.

## COUNT VII
### (Defamation Per Se)

81. The allegations contained in paragraphs 1 - 80 are realleged and incorporated herein by reference.

82. The Defendants, and each of them, made unprivileged publication of false and defamatory statements concerning Plaintiff, both orally and in print, that Plaintiff was, among other things, a "mental defective" and/or was insane.

83. The Defendants, and each of them, maliciously and/or negligently published these false and defamatory statements about Plaintiff.

84. As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff suffered damages in the form of humiliation, loss of esteem in his community, public hatred/contempt, pain and suffering, and other damages in an amount to be proven at trial.

**WHEREFORE, Plaintiff prays for relief as follows:**

A. For general, special, and punitive damages according to the proof thereof at trial;

B. For relief pursuant to HRS § 378-5 as the Court determines just and proper;

C. For reimbursement of Plaintiff's costs and expenses incurred herein, pursuant to HRS § 378-5 and as otherwise authorized by court rule and/or statute; and

D. For such other and further relief as this court deems just and proper.

### JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues pertaining to this Complaint.

Dated: Kailua-Kona, Hawai'i, May 22, 2018.

SCHLUETER, KWIAT & KENNEDY LLLP

By: _____
MICHAEL H. SCHLUETER
JASON R. KWIAT
ANDREW M. KENNEDY

Attorneys for Plaintiff
JAMI L. HARPER

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>THIRD CIRCUIT | **SUMMONS**<br>**TO ANSWER CIVIL COMPLAINT** | CASE NUMBER |
|---|---|---|
| PLAINTIFF<br>JAMI L. HARPER | vs.  DEFENDANT<br>HAWAI'I POLICE DEPARTMENT; PAUL K. FERREIRA, in his official and individual capacities; HARRY S. KUBOJIRI, in his official and individual capacities; and DOE DEFENDANTS 1-50 | |
| PLAINTIFF'S ADDRESS AND TELEPHONE NUMBER<br>SCHLUTER, KWIAT & KENNEDY LLLP<br>75-167 Kalani Street, Suite 201<br>Kailua-Kona, HI 96740<br>Tel. (808) 987-7275<br>Fax (808) 443-0339 | | |

### TO THE ABOVE NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon SCHLUETER, KWIAT & KENNEDY LLLP                                              ,
plaintiff's attorney, whose address is
75-167 Kalani Street, Suite 201, Kailua-Kona, HI 96740

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED | CLERK | | |
|---|---|---|---|
| MAY 2 3 2018 | Henrietta Chong (Seal) | | |
| I do hereby certify that this is a full, true, and correct copy of the original on file in this office. | CIRCUIT COURT CLERK | | |


In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office at PHONE NO. 961-7440, FAX 961-7416, or TTY 961-7525 at least ten (10) working days prior to your hearing or appointment date.

Reprographics (11/11)                                                                                                 SUMMONS TO ANSWER CIVIL COMPLAINT   3C-E-163